**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **CHEROKEE NATIONAL LIFE INSURANCE CO.,** | : : : | |
| **Plaintiff,** | : : | |
| v. | : : : | 5:07-CV-228 (HL) |
| **ROBERTSON BANKING CO.,** | : : : | |
| **Defendant.** | : : | |

# ORDER

Before the Court is Defendant Robertson Banking Company's ("Robertson") Motion to Dismiss (Doc. 6) and Plaintiff Cherokee National Life Insurance Company's ("Cherokee") Request for Oral Argument (Doc. 15). For the reasons stated below, the Motion to Dismiss is denied and the Request for Oral Argument is dismissed as moot.

## I. INTRODUCTION

Plaintiff Cherokee is a Georgia Corporation with its principal place of business in Georgia. Defendant Robertson is a Alabama corporation with its principal place of business in Alabama. In September 1992, the two companies signed a Creditor Agency Agreement ("the Agreement") in which Robertson agreed to sell Cherokee's insurance products to Robertson's Alabama banking customers in exchange for a

portion of the premiums from the policies. Robertson was initially approached in one of its Alabama offices regarding the deal, and the contract was negotiated and ultimately signed in Alabama. The present dispute arises out of one of the policies that Robertson sold for Cherokee: Cherokee alleges that the application Robertson provided to Cherokee contained a forged signature, and files suit for damages associated with the forgery. Robertson, however, contends that it is not subject to personal jurisdiction in Georgia.

## II. BACKGROUND

Robertson does not have offices or employees in Georgia, nor does it own, use, or possess any real property in the state. It did have some contact with the state, however, as a part of the Creditor Agency Agreement and in connection with its business relationship with Cherokee. Under the Agreement, Robertson was authorized to act on Cherokee's behalf to solicit insurance contracts. It was obligated to maintain an employee who was licensed as an insurance agent and acceptable to Cherokee. The Agreement also gave Robertson the authority to deliver Cherokee's policies to its customers. Robertson was "responsible for collecting the total premiums due from the insured Debtors and remitting same on a regular monthly basis to the Insurance Company at its Home Office," which was in Macon, Georgia. Compl. Ex. A. 4. In the event premiums were not timely submitted to Cherokee, Cherokee had the authority to deduct the amount owed from the commissions owed to Robertson.

2

In addition, Cherokee set the terms and conditions of the policies that Robertson sold and the amount of the bonuses and commissions that Robertson received. Cherokee provided the applications for insurance and drafted the language of the applications, policies, and claim forms. Every month, Robertson provided Cherokee with new business and cancellation data for policies that it sold, and it would also forward copies of the certificates for the policies it had sold during that month. In addition, when a customer would make a claim on a policy, Robertson would complete a claim form and forward it to Cherokee. Cherokee performed all "agency accounting" for Robertson in Macon, Georgia.

## III. ANALYSIS

### A. Standard

The plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over the defendant. Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th Cir. 1994). The question of personal jurisdiction is a two-part inquiry: the defendant must be subject to personal jurisdiction under the forum state's long arm statute, and the exercise of personal jurisdiction must comport with the due process requirements of the Fourteenth Amendment. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996).

#### 1. Georgia's Long-Arm Statute

An individual that transacts any business in Georgia is subject to personal jurisdiction under Georgia's Long-Arm statute. O.C.G.A. § 9-10-91(1) (2007). In

2005, The Georgia Supreme Court held that this subsection is interpreted to the full extent of due process and overruled "all prior cases that fail to accord the appropriate breadth" of the language. Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank, 620 S.E.2d 352, 354-55 (Ga. 2005). In Innovative, the court found that the lower court had limited "its review to . . . evidence establishing the lack of physical contacts (i.e., *the presence of only postal and telephonic contacts*) to connect the [foreign bank] with Georgia," and that this "limited review [was] no longer appropriate." Id. at 356. The court's analysis therefore indicates that postal and telephonic contacts can be the basis of the exercise of personal jurisdiction under subsection (1) pursuant to the current interpretation of the statute. See also Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 739 (noting that under subsection (1), "a single event may be a sufficient basis for the exercise of long arm jurisdiction if its effects within the forum are substantial enough even though the nonresident has never been physically present in the state"). Thus, the Georgia Supreme Court has made clear that the statute means what it says; *any* transaction of business in the state subjects a foreign corporation to personal jurisdiction under the Long-Arm statute, subject of course to the limitations of due process.

### 2. Due Process

"[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice." Int'l ShoeCo. v. Washington, 326 U.S. 310, 316 (1945) (quotation and citation omitted). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. V. Woodson, 444 U.S. 286, 297 (1980). No mechanical formula exists to determine whether a corporation's activities are sufficient to justify subjecting it to suit in a particular state. Int'l Shoe, 326 U.S. at 319. Nonetheless, the Court is not without guidance in defining "minimum contacts."

Sufficient contacts exist where a defendant has purposefully directed activities at residents of the forum state and the litigation arises out of those activities. Buger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985). In addition, by creating continuing obligations between himself and a resident of the forum state, a defendant "manifestly has availed himself of the privilege of conducting business there." Burger King, 471 U.S. at 475. Having enjoyed the protections and benefits of the forum state's laws, he can reasonably be required to submit to litigation in that state as well. Id. Likewise, where the defendant has engaged in systematic, continuous contacts over a number of years that resulted in a large volume of interstate commerce, minimum contacts exist. Int'l Shoe, 326 U.S. at 320.

In contrast, random, fortuitous, or attenuated contacts, or contacts that are the result of unilateral activity of another party or third person are not sufficient to create constitutional minimum contacts. Burger King, 471 U.S. at 475. A contract with an

out-of-state party does not by itself establish sufficient minimum contacts with that party's home state.  Id. at 478.  In a case where the dispute arises out of a contract, therefore, the analysis focuses on "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  Id. at 479.

Even if the court finds there are sufficient minimum contacts, however, due process prohibits the exercise of jurisdiction where it would not "comport with 'fair play and substantial justice.' "  Id. at 476 (quoting Int'l shoe, 326 U.S. at 320). Therefore,

> courts in "appropriate case[s]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."  These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

Id. at 476-77.

**B. Application**

In the present case, Defendant argues that because it does not solicit clients

in Georgia, it does not do business in the state. It has, however, transacted business with Cherokee in Georgia by mailing payments, claim forms, and copies of certificates for the policies it had sold to Georgia. It also provided data on new business and cancellation of old policies to Cherokee in Georgia. As discussed above, under Innovative and its line of cases, these transactions are sufficient to bring Robertson within the reach of Georgia's Long-Arm statute. Thus, the crucial question is whether the exercise of personal jurisdiction over Defendant complies with due process.

Defendant Robertson's contacts with Georgia arise out of its Agency Agreement with Cherokee, which was signed in 1992 in Alabama. The parties do not dispute that the negotiations took place entirely in Alabama. As the Burger King Court pointed out, however, the analysis does not end there. Instead the Court must take a highly realistic approach to the question of whether minimum contacts exist, which considers not just the negotiation of the contract, but also the relationship between the parties, the terms of the contract, and any contemplated future consequences. Id. at 479. In Burger King, for example, the defendant "deliberately 'reach[ed] out beyond' [his home state] and negotiated with a [foreign] corporation for the purchase of a long-term franchise." Id. The agreement with Burger King envisioned "long-term and exacting regulation" of the defendant's business. Id. at 480. The Court thus concluded that sufficient contacts existed to satisfy due process requirements.

This case likewise involves a long-term relationship that lasted approximately fifteen years. Robertson deliberately chose to enter into a relationship with a Georgia corporation, in which the Georgia corporation would exercise a significant amount of control over the way Robertson could conduct its insurance sales business. The insurance agent that Robertson employed had to be acceptable to Cherokee; the terms of the policies that Robertson could sell and the applications and claims forms that Robertson could use were all written by Cherokee; and Cherokee set premiums, commissions, and bonuses. The Agreement also created continuing obligations that Robertson owed to Cherokee: it had to maintain an insurance agent that could sell Cherokee's policies, collect premiums and remit them to Cherokee on a monthly basis to Macon, Georgia, provide monthly data on policies sold and cancelled, and forward copies of certificates of sold policies and claims forms. The relationship resulted in a substantial amount of business for Robertson, even if the sale of life insurance was not Robertson's primary focus: between 2002 and July 2007, Robertson collected approximately $137,000 in premiums for Cherokee.

Furthermore, the dispute in this case revolves around one insurance application in particular, which Cherokee alleges contained a fraudulent signature. Robertson faxed the application with the allegedly forged signature to Macon, Georgia. It also submitted the claim form to Cherokee in Georgia when the policy holder passed away. The present lawsuit arises directly from these contacts with

8

Georgia.

The above factors, when viewed together, demonstrate that Robertson had sufficient minimum contacts with Georgia arising out of its Agreement with Cherokee and the insurance policy at issue to satisfy due process in this case. It communicated routinely with Cherokee in Georgia, owed continuing obligations to the company, and operated under a regime in which Cherokee regulated the essential aspects of Robertson's life insurance business. The "quality and nature" of Robertson's relationship to the company in Georgia "can in no sense be viewed as random, fortuitous, or attenuated." Id. at 480 (quotations omitted). As Cherokee has pointed out, other jurisdictions have come to the same conclusion in cases with substantially similar facts. See Hager v. Doubletree, 440 N.W.2d 603, 609 (Iowa 1989); Woodmen of the World Life Ins. Soc'y v. Walker, 510 N.W.2d 439, 442-43 (Neb. App. 1993).

Robertson has also failed to demonstrate that the exercise of personal jurisdiction over it would violate traditional notions of substantial justice and fair play. It argues that the alleged acts in this case occurred in Alabama, therefore due process requires that the case be heard in that state. Under Burger King, however, where minimum contacts are established, the defendant must present a "compelling case" that the exercise of jurisdiction would be unreasonable. Burger King, 471 U.S. at 480. The presence of some witnesses in Alabama does not constitute such a compelling case.

9

**IV. CONCLUSION**

The Motion to Dismiss is denied, and the Request for Oral Argument is dismissed as moot. The stay in this case is hereby lifted and the Parties are directed to comply with the Court's August 13, 2007 Rules 16/26 Order by March 12, 2008.

**SO ORDERED**, this the 11th day of February, 2008.

*s/ Hugh Lawson*
**HUGH LAWSON, Judge**

tch